IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS J. McCORMACK, JR.,          )
                                   )
              Plaintiff,           )
                                   )
vs.                                )      Civil No. 13-cv-446-JPG-CJP
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,   )
                                   )
              Defendant.           )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Thomas J. McCormack, Jr., seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in March, 2010, alleging disability beginning on June 24, 2004.  (Tr. 18).  Plaintiff waived an evidentiary hearing.  ALJ Robert G. O'Blennis denied the application in a written decision dated March 16, 2012.  (Tr. 18-25).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.[1]  (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1.    The ALJ's RFC assessment was erroneous because it did not account for all limitations supported by the evidence, and did not properly weigh the medical opinions.

---

[1] Despite the fact that there was no hearing, the ALJ's decision is a final decision subject to judicial review. See. *Boley v. Colvin,* 761 F.3d 803 (7th Cir. 2014).

1

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   For a DIB claim, a claimant must establish that he was disabled as of his date last insured.   *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009.

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Mr. McCormack was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law

were made.  *See, Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  *See, Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

<u>**The Decision of the ALJ**</u>

ALJ O'Blennis followed the five-step analytical framework described above.   He determined that plaintiff was insured for DIB only through March 31, 2009.   Earnings records did not indicate that he had not been engaged in substantial gainful activity after the alleged onset date, but he told his doctor that he was still working as recently as August, 2009.   The ALJ found that plaintiff had severe impairments of status post-closed head injury with mandible fractures and pansinusitis from 1999, ongoing mild seasonal neck and joint pain, and a flat affect at times.   He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Mr. McCormack had the residual functional capacity (RFC) to perform a full range of work at the light exertional level during the relevant time period.   He concluded that plaintiff was able to do his past work as a restaurant server and assistant manager through his date last insured, and therefore he was not disabled.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

    1.     **Agency Forms**

Plaintiff was born in 1947, and was 57 years old on the alleged onset date of June 24, 2004. (Tr. 139).   He was insured for DIB through March 31, 2009.   (Tr. 140).

Plaintiff said he was unable to work because of a closed head injury, mental health issues and right sided pain.   He said he stopped working on June 24, 2004.   He had completed four or more years of college.   (Tr. 144-145).

Plaintiff completed a form indicating that he worked as a server in a restaurant from 1992 to 1995.   He worked as a server and assistant manager in a restaurant from 1995 to 1997.   Then then worked in child care at a group home from April 1999 to November 1999.   He resumed working as a server in a restaurant from February 2002, to September 2004.   (Tr. 182).

Agency earnings records show that plaintiff had reported earnings of $19,327.65 in 2002, $21,487.39 in 2003, and $4,737.14 in 2004.   He had no reported earnings for any year after 2004. (Tr. 130).

Mr. McCormack filed a Function Report in May 2010.   He said he lived with his sister. He said he was not able to focus, had a poor memory and communication skills, and was not able to verbalize what he was thinking.   He had poor balance and pain in his right shoulder, neck and leg.   He had slow reactions.   On a daily basis, he cleaned himself up, cleaned the house, ate, watched the news, took walks, drove to the store and tried to pay bills.   He made simple meals.

He did cleaning and laundry.   He drove a car, was able to go out alone, and shopped for food and clothing.   He could not lift over ten pounds and had poor balance for squatting, walking or climbing stairs.   He was not able to follow written directions.   (Tr. 193-200).

Mr. McCormack wrote a letter stating that he would not be present for the hearing scheduled for February 2, 2012.   He stated, "My problems are all neurological and I have nothing to add to my medical reports or doctors [sic] report."   (Tr. 218).   He also completed a written waiver of his right to appear at a hearing.   (Tr. 117).

### 2.    Medical Treatment

Mr. McCormack was admitted to Protestant Memorial Medical Center in Belleville, Illinois, following a serious motor vehicle accident on June 25, 1999.   He suffered a closed head injury, fractured jaw, pulmonary insufficiency, scalp laceration, and left hemiparesis.   He was discharged on July 16, 1999, and was to undergo rehabilitation care.   (Tr. 276).

A psychiatric consult was done by Dr. Julius Clyne before plaintiff was discharged on July 16, 1999.   There was an issue as to whether plaintiff should go to a rehabilitation facility in St. Louis, Missouri.   His physicians wanted Dr. Clyne to assess his competency to decide where to undergo rehabilitation care.   Dr. Clyne found that plaintiff had some impairment of remote memory, but his recent memory was intact.   He showed no impairment of his intellectual capacities.   He was able to do calculations well.   His judgment was not impaired.   He had no psychotic symptoms or delusional thinking.   Dr. Clyne noted that he had some depressive symptoms and was somewhat anxious, but he felt that was "understandable, in view of his circumstances at the present time."   Dr. Clyne diagnosed adjustment disorder with mixed emotional features.   He concluded that plaintiff was competent to make decisions on his own

behalf.   (Tr. 305-307).

After his discharge, plaintiff had outpatient physical therapy at Protestant Memorial.   On October 1, 1999, he cancelled his future appointments because he was going back to work.   He indicated he would continue with his home exercise and walking programs.   (Tr. 266).

The next medical record is dated August 28, 2003.   On that date, plaintiff saw Dr. Robert Schultz, a neurosurgeon.   Dr. Schultz had last seen plaintiff in May 2003, but no earlier records are in the transcript.[2]   Plaintiff was taking only Darvocet-N, prescribed by Dr. Schultz.   Dr. Schultz wrote, "Today he states as long as he takes his Darvocet-N 1 tablet 2-3 times a day he is able to work a full 40 hour week."   (Tr. 245).

In January 2004, Mr. McCormack told Dr. Schultz that he was still working 40 hours a week as a waiter.   Dr. Schultz noted that his affect was "completely flat because of his head injury."   (Tr. 241).

Plaintiff claims he became disabled as of June 24, 2004.

On August 3, 2004, Dr. Schultz noted that he was still working 40 hours a week.   (Tr. 237).   Dr. Schultz continued to see plaintiff at regular intervals, and to prescribe Darvocet-N.   His office notes indicate that, although plaintiff had some pain in his neck, right foot and right ankle, he was still able to work full-time through at least January 10, 2007.   (Tr. 230-236).   On July 10, 2007, Dr. Schultz noted that plaintiff was only working part-time.   His mother had Alzheimer's disease.   Plaintiff and his sister, who also worked part-time, both cared for their mother.   Dr. Schultz observed that plaintiff's "affect remains as flat as ever without any change." He also noted that plaintiff was "functional" as long as he took Darvocet-N.   (Tr. 229).

[2] Plaintiff was apparently also under the care of a Dr. Wade.   See, Tr. 244.   There are no notes from Dr. Wade in the transcript.   Plaintiff was represented by counsel throughout the administrative proceedings. He has not argued that the record is incomplete because it does not contain Dr. Wade's notes.

Dr. Schultz continued to see plaintiff at six month intervals.   In March 2008, he was still working part-time and taking care of his mother.   He was "comfortable and able to function" on Darvocet-N.   He had no side effects.   According to Dr. Schultz' notes, plaintiff continued to work part-time through at least August 25, 2009.   On that date, the doctor noted that Darvocet-N "keeps him comfortable enough that he can work and lift his mother and move her around as need be."   (Tr. 226-228).

On March 23, 2010, Dr. Schultz noted that plaintiff "could not keep up with the work that he's been doing for years."   Plaintiff had turned 62 and took early retirement.   His mother's Alzheimer's had gotten worse.   (Tr. 225).   On September 21, 2010, Dr. Schultz noted that plaintiff's mother was getting worse and he was taking care of her full-time.   He was trying to get disability.   Again, Dr. Schultz noted that plaintiff was "functional" as long as he took his pain medication.   (Tr. 379).

### 3.      Opinions of Treating Doctor

On July 27, 2010, Dr. Schultz answered a set of written questions regarding plaintiff's impairments.   He indicated diagnoses of neck pain, degenerative disc disease and degenerative osteoarthritis of the cervical spine.   He said that plaintiff had symptoms of fatigue, increased muscle tension, difficulty remembering, depression, emotional lability, difficulty solving problems, and "emotional impairment" secondary to a brain injury.   He opined that plaintiff could sit and stand/walk for less than 2 hours a day, frequently lift up to 20 pounds, and could only occasionally twist, stoop/bend, and climb ladders.   He could frequently climb stairs.   (Tr. 370-372).

## Analysis

Plaintiff's main argument is that the ALJ erred in not accepting Dr. Schultz' opinion as to his limitations.

Dr. Schultz is, of course, a treating doctor. The opinions of treating doctors are to be evaluated under 20 C.F.R. § 404.1527. Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in § 404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. § 404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010), citing § 404.1527(d).

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). *See also, Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds no error in the ALJ's weighing of Dr. Schultz' opinion. ALJ O'Blennis rejected Dr. Schultz' opinion because it was not supported by his treatment notes. Dr. Schultz wrote his report on July 27, 2010, more than a year after

9

plaintiff's DIB insurance ran out.   The ALJ correctly concluded that Dr. Schultz' office notes for the period before March 31, 2009, do not support the physical limitations set forth in his report. According to Dr. Schultz' notes, plaintiff's physical symptoms were controlled on Darvocet-N, and he was able to function and to work while taking that medication.   The ALJ found it significant that Dr. Schultz' notes indicated that plaintiff continued to work full-time through at least January 10, 2007, and he worked part-time while helping to care for his mother until at least August 25, 2009.   See, Tr. 20-21.   On that date, Dr. Schultz noted that Darvocet-N "keeps him comfortable enough that he can work and lift his mother and move her around as need be."   (Tr. 226-228).

As for plaintiff's alleged mental impairments, the ALJ correctly noted that Dr. Schultz' only observation was that plaintiff had a flat affect.   He never diagnosed depression or noted any difficulty with memory or problem solving.   See, Tr. 22.

Plaintiff argues that the medical evidence does, in fact, support Dr. Schultz' opinion.   This argument is not persuasive.   First, plaintiff relies heavily on the medical records from the period immediately following his accident in 1999.  Doc. 26, p. 11.   However, as he admits, he returned to work after his recovery, and he does not allege that he became disabled until June 24, 2004. Thus, the records from 1999 are of little relevance.   Secondly, in his review of Dr. Schultz' treatment notes, he completely fails to acknowledge that Dr. Schultz repeatedly noted that he was functional and able to work as long as he took Darvocet-N.   Doc. 26, pp. 11-12.

Plaintiff waived his right to appear at a hearing and testify before the ALJ.   He has made no attempt to explain the obvious discrepancy between his earnings records and Dr. Schultz' notes indicating that he was still working, albeit part-time, as of his date last insured.   In the absence of

10

any such explanation, the ALJ did not err in taking Dr. Schultz' notes at face value. "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

Plaintiff also suggests that the ALJ should have obtained a consultative psychological examination. The record does not reflect that plaintiff made that request of the ALJ. Courts generally defer to the ALJ's decision about whether to order a consultative examination. Noting that the clamant has the "primary responsibility for producing medical evidence demonstrating the severity of impairments," the Seventh Circuit has recognized that, "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Here, an examination would have been of doubtful value, as the issue is plaintiff's condition as of March 31, 2009, not as of the time the ALJ considered the case and issued his decision in March 2012.

Mr. McCormack applied only for DIB. In order to prevail, he must show that he was disabled as of the date he was last insured for DIB, i.e., March 31, 2009. It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011). He has not done so here.

The ALJ obviously recognized that plaintiff suffered serious injuries in his 1999 accident. Based on the record before him, he reasonably concluded that plaintiff recovered sufficiently to return to work and that he continued to work at least through his date last insured. In view of the

glaring contradictions between Dr. Schultz' treatment notes and his later opinion, the ALJ's decision to reject Dr. Schultz' opinion was supported by substantial evidence.

In the final analysis, plaintiff's arguments are a plea to the Court to reweigh the evidence, which is far beyond this Court's proper role.   The most that can be said is that reasonable minds could differ as to whether Mr. McCormack was disabled during the relevant time period.   In that circumstance, the ALJ's decision must be affirmed if it is supported by substantial evidence. And, the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ in reviewing for substantial evidence.   *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012).

## <u>Conclusion</u>

After careful review of the record as a whole, the Court is convinced that ALJ O'Blennis committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Thomas J. McCormack, Jr.'s application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   March 30, 2015**


<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**

12